```
        IN THE UNITED STATES DISTRICT COURT FOR THE
               EASTERN DISTRICT OF OKLAHOMA

EVERETT DWAIN KERR,           )
                              )
             Plaintiff,       )
                              )
v.                            )   Case No. CIV-19-023-RAW-KEW
                              )
COMMISSIONER OF THE SOCIAL    )
SECURITY ADMINISTRATION,      )
                              )
             Defendant.       )
```

## REPORT AND RECOMMENDATION

Plaintiff Everett Dwain Kerr (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 52 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a concrete pipe plant supervisor. Claimant alleges

an inability to work beginning October 10, 2015 due to limitations resulting from congestive heart failure, atrial fibrillation, arthritis in the knees, and asthma.

## Procedural History

On January 28, 2016, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and on January 19, 2017, he filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 28, 2017, Administrative Law Judge ("ALJ") James Bentley conducted an administrative hearing by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding from McAlester, Oklahoma. On December 4, 2017, the ALJ issued an unfavorable decision. On November 21, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from

4

severe impairments, he retained the RFC to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to discuss uncontroverted and/or significantly probative evidence which conflicted with his findings; and (2) evaluating Claimant's subjective statements.

## Consideration of the Evidence

In his decision, the ALJ determined Claimant suffered from the severe impairments of morbid obesity, recurrent persistent atrial fibrillation, asthma, hypertension, atypical chest pain, congestive heart failure, suspected obstructed sleep apnea, and mild degenerative changes to the left and right knee. (Tr. 18). The ALJ concluded that Claimant retained the RFC to perform light work except that he must avoid concentrated exposure to dust, fumes, and poorly ventilated areas. The ALJ determined that Claimant could occasionally balance, stoop, kneel, drouch, and crawl, climb ramps and stairs, but never climb ladders, ropes, and scaffolds. Claimant must avoid unprotected heights and dangerous moving machinery. He required a sit/stand option defined as a brief positional change from sitting to standing or vice versa

5

with no more than one change in position every 20-25 minutes and without leaving the workstation so as not to diminish pace or production. (Tr. 20).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of ticket seller, office helper, and cashier II, all of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 26-27). As a result, the ALJ found Claimant was not disabled from October 10, 2015 through the date of the decision. (Tr. 27).

Claimant contends that the ALJ failed to consider certain medical evidence which would have had an effect upon his ability to engage in basic work activities. Claimant first asserts that the ALJ's finding that his atrial fibrillation was under control through medication took an isolated comment in one report to ignore numerous other references in the record of problems arising from the condition.

The record indicates Claimant was diagnosed with atrial fibrillation in 2006, although other portions of the record indicate that the condition first occurred in 2015. (Tr. 252, 328, 468). He was treated conservatively. Id. On January 6, 2016, Claimant was assessed to have persistent atrial fibrillation.

While he was symptomatic, the physician could not determine if his shortness of breath was attributable to the condition or was due to asthma, obesity, or deconditioning. (Tr. 253). When Claimant was evaluated on May 7, 2016 by Dr. Conner Fullenwider, he reported a history of congestive heart failure and atrial fibrillation since October of 2015. He described shortness of breath when lying flat and only being able to walk for ten feet before getting short of breath. He also noted chest pain while at rest and exertion, occurring three to four times per week and lasting for 10 to 15 seconds at a time. He rated his pain at eight out of ten. Claimant also stated the condition affected his ability to work secondary to increasing shortness of breath and chest pain with activity. (Tr. 328). Dr. Fullenwider concluded that Claimant had an "irregularly irregular heartbeat." (Tr. 330-31).

On June 1, 2016, Claimant was noted to be in atrial fibrillation on May 23, 2016. He suffered from fatigue and shortness of breath. (Tr. 339).

On August 5, 2016, it was noted that Claimant had been treated for atrial fibrillation but that the treatment had failed. He was successfully cardioverted in April of 2016 but did not stay in normal rhythm long – only about a month. In May of 2016, Claimant

7

was found by EKG to be back in atrial fibrillation. (Tr. 417). Claimant's condition manifested itself in fatigue and shortness of breath with occasional flutters in his chest. (Tr. 418).

On October 27, 2016, Claimant was found to have tachycardia with "regularly irregular" rhythm.

On August 8, 2017, Claimant's EKG continued to reveal atrial fibrillation with rapid ventricular response. The physician noted no acute changes as compared to the testing done on August 5, 2016. (Tr. 468).

On August 25, 2017, Dr. Siva Soma stated

> [Claimant] was previously cardioverted to sinus rhythm and was on amiodarone for "2 weeks." His rate is reasonably well controlled today. With long discussion with patient regarding his diagnosis of atrial fibrillation and treatment options. . . . We will schedule him for a TEE/cardioversion at the earliest available date. Post-cardioversion, we will place him briefly on amiodarone and see if he maintains sinus rhythm. We also discussed with him that the chance of keeping him in sinus rhythm will be difficult given his comorbid conditions including morbid obesity. If so, we will plan on a rate control strategy.

(Tr. 473)

In addressing Claimant's atrial fibrillation condition, the ALJ only noted that Dr. Stanley Zimmerman found in the August 25, 2017 examination that an EKG confirmed atrial fibrillation, "but

8

Dr. Zimmerman noted that the claimant's hear (sic) rate was reasonably well controlled in (sic) his current medications." (Tr. 23). He then further concluded that "[i]n regards to the claimant's atrial fibrillation and congestive heart failure, cardiologists noted reasonable control of the claimant's heat (sic) rate and the claimant's ejection fraction improved throughout the adjudicative period with his prescribed medications." (Tr. 25).

It should be noted that the ALJ erroneously attributed the August, 2017 examination to Dr. Zimmerman when it was conducted by Dr. Soma. Further, the ALJ only pointed out the evidence from the single examination which supported improvement while ignoring the considerable evidence which indicated Claimant's atrial fibrillation condition required further treatment to restore sinus rhythm which was not anticipated to be successful due to Claimant's morbid obesity.

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must also give consideration to several factors in weighing any medical opinion. Id.; 20 C.F.R.

9

§ 416.927(d)(1)-(6). Moreover, an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). On remand, the ALJ shall consider Claimant's atrial fibrillation and the full record on the treatment of the condition as well as the continuing effect upon his ability to engage in basic work activities.

Claimant also challenges the ALJ's addressing of his problems with his knees and lower extremities. The ALJ cited to the record extensively reciting Claimant's visits to various medical providers concluding that the vast majority of testing was either normal or unremarkable. (Tr. 22-25). Claimant contends the ALJ failed to reference the presence of edema on some occasions (Tr. 291, 294-95, 298, 303, 306-07, 386, 397, 401, 434, 447, 472) and tenderness, decreased mobility, and moderate pain with motion noted on some records. (Tr. 381, 401, 433, 439, 443).

This Court is less concerned with the consideration of the edema – which was included in the ALJ's decision (Tr. 23) – than with the moderate pain and decreased mobility that was repeatedly referenced in the record but not noted by the ALJ. On remand, the ALJ shall consider whether the findings of decreased mobility and pain with motion would affect his ability to engage in basic work

activity and further limit the RFC.

Claimant also asserts the ALJ did not fully consider his obesity and the effects that it had in exacerbating other conditions. An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments).

At step three, "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." Soc. Sec. R. 02-1p. "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the case record. Id. However, speculation upon the effect of obesity is discouraged.[2]  See, Fagan

---

[2] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments."  Soc. Sec. R. 02-

11

v. Astrue, 2007 WL 1895596, 2 (10th Cir.).

The ALJ noted the medical records indicating that Claimant's obesity contributed to the severity of his medical conditions and stated that he considered Claimant's obesity in arriving at the exertional level and postural limitations in the RFC. (Tr. 23, 25). This Court takes the ALJ at his word and finds that he adequately considered the singular and combined effects of Claimant's obesity.

### Consideration of Claimant's Subjective Statements

Claimant suggests that the ALJ improperly discounted his subjective statements of pain, numbness, and weakness because they were inconsistent with the objective medical record. The ALJ is required to determine whether a claimant has impairments which could reasonably cause the claimed symptoms, then he must consider the intensity and persistence of the claimant's symptoms and determine the extent to which the symptoms limit his ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c); 416.929(c); Soc. Sec. R. 16-3p.

The ALJ properly considered Claimant's work history and the fact he sought treatment for his conditions. He also indicated

---

01p.

several areas where the medical record did not support the level of limitation claimed by Claimant. The ALJ also considered Claimant's report of activities. (Tr. 21). Generally, the ALJ's findings on Claimant's subjective statements were supported by substantial evidence. However, should the reconsideration of Claimant's atrial fibrillation and knee problems require a re-evaluation of Claimant's statements, the ALJ should revisit his findings in this regard.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of March, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE